The CHICAGO BOARD OF REALTORS, et al., Plaintiffs,

v.

The CITY OF CHICAGO, a municipal corporation, et al., Defendants,

and

Metropolitan Tenants Organization, et al., Intervenors.

No. 86 C 7763.

United States District Court, N.D. Illinois, E.D.

Nov. 3, 1986.

As Amended Nov. 4, 1987.

Clifford L. Weaver, Kenneth E. North, Steven M. Elrod, Maureen A. Crowley, Burke, Bosselman & Weaver, Chicago, Ill., for plaintiffs.

Herbert Caplan, Robert Dargis, Judson H. Miner, Acting Corp. Counsel, City of Chicago, Chicago, Ill., for defendants.

William P. Wilen, Legal Assistance Foundation of Chicago, Chicago, Ill., for intervenors.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

### INTRODUCTION

Seven years ago, the Chicago City Council began considering legislation to meet what it considered to be a need to improve landlord and tenant relationships. Finally, less than two months ago on September 8, 1986, it passed, by a vote of 42–4, the "Residential Landlord and Tenant Ordinance", now codified as Chapter 193.1 of the Municipal Code of Chicago. It is a comprehensive scheme of regulating landlord-tenant relationships. About half of its provisions were to take effect on October 15, 1986. The other half of them are scheduled to take effect after January 1, 1987.

This case challenges the constitutional validity of that Ordinance. The plaintiffs are property owners, property managers, real estate brokers and organizations which represent the interests of the owners, managers and brokers of multiple apartment structures. Also appearing as a plaintiff is the Chicago Association of Commerce and Industry, whose stated purpose is to foster and promote the business interests of its 42,000 business and professional members. The defendants are the Mayor of Chicago and the City itself.

Plaintiffs raise various federal and state constitutional challenges. Jurisdiction over the federal claims is asserted under 28 U.S.C. § 1331(a) and venue is asserted under 28 U.S.C. § 1391. Plaintiffs also request that I assume jurisdiction of the state constitutional claims under the doctrine of pendent jurisdiction.

The matter was brought into this court 20 days ago on October 14, 1986. In their original complaint plaintiffs alleged nine separate Counts. They claim that the Ordinance impermissibly interferes with their constitutionally protected property interest to control the use and operation of their residential property, free from unduly burdensome governmental regulation. Concurrently with the filing of their complaint, plaintiffs moved for a Temporary Restraining Order, and on the same day an emergency hearing was held. Because the Ordinance was to become effective the next day, and in view of the seriousness of the allegations raised in the complaint, the limited time allowed by the plaintiffs' emergency motion for me to study the issues

there raised, and my belief that a short period suspending the operation of the Ordinance would not measurably disserve the public interest, I granted a Temporary Restraining Order staying the effective date of the Ordinance for 10 days.

The parties were ordered to appear and did so on October 17, 1986, and at that time, after having given the complaint and the motion for a Temporary Restraining Order a preliminary study, I was prepared to hear the arguments of the parties. This, however, became unnecessary because the parties agreed to an extension of the Temporary Restraining Order to cause it, by stipulation of the parties, to expire at the end of this hearing on November 3, 1986. This would provide the parties the necessary time to brief, on a very abbreviated schedule, the arguments on several motions they wished to make including the request for a Preliminary Injunction. Also appearing by counsel before me on October 17 were three individuals and nine organizations, to whom I will refer as Representatives of Tenants' Interests. They petitioned for leave to intervene alongside the City and the Mayor as defendants, claiming an interest as a matter of right in the enforcement of the rights and remedies the Ordinance provides for the renters of residential property in Chicago.

On October 17, 1986, the plaintiffs filed an amended complaint, stating a claim of unconstitutionality in ten Counts. The amended complaint added a Count under 42 U.S.C. § 1983, the traditional color of law civil rights statute. The plaintiffs in their amended complaint seek a declaratory judgment and injunctive relief. Before me now are three fully briefed motions. The Representatives of Tenants' Interests petitioned from the outset for leave to intervene. Their request was allowed. On October 20, they moved under Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint for failure to state a claim upon which relief can be granted. The defendants all join in this motion. The plaintiffs moved on October 22, 1986 for a Preliminary Injunction. I will address each of the motions in that order.

## INTERVENTION

The Representatives of Tenants' Interests have petitioned to intervene as a matter of right under Fed.R.Civ.P. 24(a)(2) or, in the alternative, permissively under Fed.R.Civ.P. 24(b). Rule 24(a)(2) establishes four requirements for intervention as of right: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action, and (4) lack of adequate representation of the interest by the existing parties to the action." *Meridian Homes Corporation v. Nicholas W. Prassas & Company*, 683 F.2d 201, 203 (7th Cir.1982). Each requirement must be met; if one is not, then intervention as a matter of right must be denied. Under the fourth requirement, the Representatives of Tenants' Interests must show a lack of the adequate representation of their interest by the existing parties to the action. *Meridian Homes*, 683 F.2d at 205 (citing *Trbovich v. United States*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972)). Here, the defendants and the Representatives of Tenants' Interests have the same ultimate objective. It is to have this court dismiss the plaintiffs' amended complaint or, alternatively, declare the Ordinance constitutional and deny the extraordinary relief sought by the plaintiffs. I observe in passing that they have joined in briefing the issues before me. At the same time, it is a reasonable presumption that the City Council and the Mayor who were responsible for the enactment of the Ordinance have sufficient expertise in the matters addressed by their legislation to adequately protect the interests of the people out of concern for whom they pursued the enactment of it, and intervention as a matter of right would be improper under Fed.R.Civ. P. 24(a)(2).

The more intriguing question is one not raised by the parties. It grows out of the description of the organizations seeking to intervene. Because it could be jurisdictional it ought at least be mentioned. Rule 24 presumes that a proposed intervenor first would meet the requirements of standing

under Article III of the Constitution. *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982); *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973). Although the true relationships between the parties the applicant organizations say they represent and the organizations themselves is not clear, and though it may be that at best they are interested bystanders seeking to vindicate "ideological" values, I was convinced at the outset of the case that they could address themselves with a sufficient degree of expertise in the general field of landlord-tenant relations in Chicago to be of assistance without delaying the proceedings, whether they appear permissively under Rule 24(b) or as *amicus curiae*. See *United States v. City of Pittsburg, California*, 467 F.Supp. 1080, 1082 (D.C.Cal. 1979), *aff'd*, 661 F.2d 783 (9th Cir.1981). See also *Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 917 (7th Cir.1976), *aff'd sub nom. United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). It is sufficient for the issues raised by the plaintiffs' objections that I am pleased to have the parties appearing before me allegedly on behalf of Chicago's tenants, but that I hold that they are not here as Intervenors as a matter of right under Rule 24(a). I will next address the defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### MOTION TO DISMISS

■ It has been said innumerable times that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). In a context similar to this case the Seventh Circuit has recently stated that [w]hile this standard is often difficult for the movant to meet—given the complexities of constitutional litigation—it is not insuperable ... If a complaint alleges that a state regulation, on its face, is inconsistent with a specific provision of the United States Constitution, that complaint will be dismissed where a thoughtful reading of the regulation convinces the district court that the regulation is plainly within the bounds of the Constitution.

*Gaines v. Lane*, 790 F.2d 1299, 1303 (7th Cir.1986). The reason for this rule is apparent; a facial challenge to the constitutionality of legislative action may depend solely upon a reading of the challenged provision and whether it meets the test appropriate to the specific constitutional provision under which it is challenged. This sort of facial challenge admits of no room for proof of any facts in support of the challenge. Such questions are pure questions of law, and as was held in *Gaines* may be answered on the pleadings.

And in addressing the issues raised in the plaintiffs' complaint, my duty is not to adjudge the wisdom of the Ordinance. It is to determine, under the law that I must apply, whether the challenged provisions of the Ordinance go beyond the legitimate bounds of the police power of the Mayor and the City of Chicago to enact them. The Supreme Court has stated that in doing this I must give considerable weight to the broad power the Constitution allows states "in regulating housing conditions in general and landlord-tenant relationships in particular...." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440, 102 S.Ct. 3164, 3178, 73 L.Ed.2d 868 (1982). With these guidelines in mind, I will address each of the Counts in plaintiffs' amended complaint.

### *Denial of Equal Protection*

Plaintiffs argue that the Ordinance unconstitutionally distinguishes between dwelling units in owner-occupied buildings containing six or less units and all other buildings. The Ordinance exempts from its governance only such owner-occupied buildings containing six or less units. Plaintiff

claims that the classifications are "arbitrary and capricious, bear no rational relationship to the stated purposes of the Ordinance and to not otherwise promote the public health, safety and welfare of the City of Chicago." They seek a declaration of unconstitutionality under the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Article I, Section 2, of the Illinois Constitution.

■ This type of claim of the denial of equal protection does not involve a charge of invidious discrimination based on immutable characteristics such as race or sex. I cannot overturn the Ordinance unless I conclude that the City Council's actions were irrational. *Vance v. Bradley*, 440 U.S. 93, 96–97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). And "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

■ The distinction drawn in the Ordinance would survive an attack under the Equal Protection Clause if the Ordinance " 'advances a reasonable and identifiable governmental objective.' " *Moran v. Beyer*, 734 F.2d 1245, 1247 (7th Cir.1984) (quoting *Schweiker v. Wilson*, 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981)). The analysis breaks down into two questions: (1) whether the Ordinance's purpose is reasonable, and (2) whether the Ordinance rationally advances that purpose. *Moran*, 734 F.2d at 1247. The purpose of the Ordinance here is found in its preamble. It is "to protect and promote the public health, safety and welfare" of the masses and "to establish the rights and obligations of the landlord and the tenant in the rental of dwelling units." It seeks to encourage both the landlord and the tenant to maintain and improve the quality of housing. This purpose appears to be reasonable and rational. The city has advanced as a rational basis for the classification the reasoning that when the landlords themselves are also residing in smaller structures such as two to six unit apartment buildings along with their tenants they will more likely provide all of the services in order to share in the comfort themselves.

*Violation of Substantive Due Process*

■ Plaintiffs claim that many of the provisions in the Ordinance violate the Fourteenth Amendment of the Constitution of the United States in that they deprive landlords of protected property rights without due process of law. They claim that these provisions do not bear any substantial, or even a rational, relationship to the stated purposes of the Ordinance and do not serve to promote the public health, safety and general welfare of the City of Chicago. Plaintiffs have framed this argument as a balancing test. However, before any balancing of relative interests takes place, what must first be done is to determine whether any substantive due process rights as claimed by the plaintiffs exist. *Altman v. Hurst*, 734 F.2d 1240, 1241–42 (7th Cir.1984) (*per curiam*), *cert. denied*, 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320.

It is obvious from the charges made by the plaintiffs that they refer to the historic prerogatives of ownership of property and obligations of contract. They insist that the Ordinance transgresses substantive due process in the following ways: (1) by requiring a two day minimum waiting period before a landlord can gain access to an apartment for legitimate purposes other than emergencies; (2) by requiring security deposits to be held in separate accounts within the state; (3) by requiring that detailed receipts be given to tenants; (4) by requiring landlords to pay interest at a statutorily determined rate on security deposits; (5) by imposing joint and several liability on a successor landlord for security deposits, interest, and prepaid rent; (6) by requiring disclosure to tenants of the actual owners of properties being managed or held in trust; (7) by requiring disclosure to tenants before lease execution any code violations which had been cited in the previous twelve months, whether or not they have been corrected, along with disclosure of the pendency of any code enforcement

litigation or compliance board proceedings, as well as any notice of intent by the City or any utility provider to terminate utility services; (8) by requiring a landlord to immediately make repairs of even minor defects, and, when not doing so promptly, permitting the tenant in his own independent discretion to himself have the repair made and then deduct from rental payments the cost of the repair; (9) by permitting the tenant to procure substitute housing in certain narrowly-defined circumstances and making the landlord liable for the costs; (10) by compelling a landlord to agree to any so-called reasonable sublease proposed by a tenant and bearing the cost of it; (11) by precluding a landlord from terminating a lease if the landlord accepts a late rental payment knowing that there has been a default in the payment of rent; (12) by limiting late payment fees regardless of their size in the contract to $10.00; (13) by rendering automatically unenforceable certain terms in leases; (14) by requiring landlords to attach a summary of the Ordinance to each written rental agreement not only for a new rental but as well for a renewal of an expiring rental; and (15) by creating a presumption, rebuttable though it may be, that a landlord's conduct in cancelling or not renewing a lease with a tenant who has utilized any of the self help provisions of the Ordinance is retaliatory.

In *Baer v. City of Wauwatosa,* 716 F.2d 1117 (1983), the Court of Appeals for the Seventh Circuit stated:

> The Due Process Clause of the Fourteenth Amendment has been interpreted to place substantive as well as procedural restrictions on [governmental] action. Nowadays most of the substantive restrictions are based on liberties (such as liberty of speech and the press) protected by the Bill of Rights and held to be applicable to the states through the due process clause of the Fourteenth Amendment ... But the due process clause also places a residual substantive limitation on a state's depriving a person of life, liberty or property: the deprivation must have a rational basis in some lawful interest of the state ... This requirement is easy to satisfy....

716 F.2d at 1123 (citations omitted). Cf. *Brown v. Brienen,* 722 F.2d 360, 368 (7th Cir.1983) (Flaum, J., concurring) ("The Supreme Court, however, has analyzed the issue of deprivation of property as involving only procedural due process rights ...") (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed. 2d 265 (1982)).

Substantive due process rights have been referred to principally in areas concerning the First Amendment and in matters within the general area of family relations and sex. *Bigby v. City of Chicago,* 766 F.2d 1053, 1058 (7th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986). The rights asserted by plaintiffs here, of course, bear no relation to these matters, but this does not mean that plaintiffs have no substantive due process claims at all. *Baer v. City of Wauwatosa.* And as in that case, deprivation of plaintiffs' property rights, if it be a deprivation, must have a rational basis in the serious police power interests of the City of Chicago.

Looking at the plaintiffs' allegations another way, the plaintiffs do have a substantive due process right protected by the Constitution that can be said to be a matter of Fourteenth Amendment concern in the interplay between a city's legislative action and a private person. The express language of the Fourteenth Amendment applicable here is that "no state" may deprive a person of "liberty" or "property" without due process of law, and this language has been found to embrace both procedural and substantive due process of law. When a city's ordinance relates to matters involving civil litigation or a right to notice and an opportunity to be heard, it always involves procedural due process. *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

[7] On the other hand, one form of governmental action completely prohibited to states and their instrumentalities involves the fundamental right of people to enter into and be guided in their mutual conduct by lawful contracts. This does not rest alone on the Fourteenth Amendment. Article I, Section 10 of the United States Constitution is doubtless one of the clearest and most certain of its statements: "No state shall pass any law impairing the obligation of contracts". *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978); *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); *Home Building and Loan Ass'n v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). But even this substantive right is held to give way to very modest impairment made inescapably necessary in serving an important public interest. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983); *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

## Void for Vagueness

Plaintiff claims that the Ordinance lacks "meaningful standards, guidelines or instructions so that persons of ordinary intelligence do not have a reasonable opportunity to comply with the Ordinance." They also argue that it improperly delegates summary power to tenants without defining the terms and conditions under which such discretion may be exercised, and that it includes seemingly contradictory language. They particularly challenge the definition of "material noncompliance" as being overbroad, vague and difficult to understand. This claim arises under the Fourteenth Amendment to the United States Constitution.

In this matter plaintiffs rely heavily on the affidavit of Michael J. Robillard, submitted in support of their motion for a Temporary Restraining Order. Mr. Robillard is the Vice President of the Property Management Division of the Habitat Company, one of the plaintiffs in this case. He states, "Even though I have reviewed the Ordinance and discussed it with various knowledgeable people in the Chicago residential rental market, I am still unclear and unsure as to the landlords' obligations, tenant's duties and remedies, and what 'material noncompliance' means."

■. The Ordinance appears to me to be well-drafted and clear in its terms. In particular, the term "material noncompliance" is defined in the Ordinance by reference to the 27 examples of material noncompliance that are listed in section 193.1–11. There "material noncompliance" would be held to include but not be limited by these examples. These 27 examples, which appear to cover a very broad range of issues that can arise in landlord-tenant relations, make it appear unlikely that a landlord can be said not to have been given fair notice of the landlord's expected conduct under the Ordinance. Plaintiffs offer no examples of a particular situation that might be considered material noncompliance without being defined by the Ordinance.

The Supreme Court in *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) counseled against yielding too easily to a facial challenge of an Ordinance based on overbreadth and vagueness.

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissably vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."

455 U.S. at 494–95, 102 S.Ct. at 1191. The Supreme Court also has counselled that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). See also *Baer v. City of Wauwatosa*, 716 F.2d at 1124 ("[T]he time to complain about ... enforcement [of a standardless ordinance] is when it is attempted."). I find the Ordinance not to be facially vague.

*Taking*

That it may be distinguished from the other "due process" principles presented in other Counts of the complaint, this claim must be read as an interlineation within them of the thought embodied in the constitutional provision regarding eminent domain. Our constitutional government is rooted in the belief in "natural rights", that organized society must honor and protect as a part of the basic right of people to "life and liberty", to be intruded upon by government only to the minimal extent necessary to preserve an organized and functional society. And where there is a necessary intrusion the loss must be balanced by a reasonably compensating return of a benefit from society. Thus it appears with equal force that not only may a person not be deprived of private property without due process of law, but such deprivation may not be permitted without "just compensation".

Plaintiffs argue here that the Ordinance destroys "investment backed expectations without just compensation or due process of law." Their argument focuses on certain provisions that are included in the typical residential lease and which the Ordinance declares to be of no effect. They claim that if the Ordinance becomes law, it "will increase the risk involved in owning rental real estate in the City of Chicago and, by increasing the risk, the fair market value of the rental real estate in the City of Chicago will decline anywhere from 5 to 10%, depending upon the age and condition of the building located thereon." This is found in the affidavit of John F. Enright,

an appraiser, submitted in support of the plaintiffs' motion for a Temporary Restraining Order.

██ Assuming that the Ordinance will, if enforced, have the effect of decreasing property values in the amount as stated in the affidavit, this by itself, according to the philosophy followed by the courts in these cases, will not result in a taking. The subject Ordinance as enacted by the City Council is legitimate governmental action. It falls within the Council's police powers to promote the health, safety and welfare of the citizens of Chicago. It should be noted, of course, that this phrase is an easy "catch-all" the courts have adopted to support actions that lack clearly beneficial purposes. But the rule is that

> impairment of the market value of real property incident to otherwise legitimate government action ordinarily does not result in a taking ... At least in the absence of an interference with an owner's legal right to dispose of his land, even a substantial reduction of the attractiveness of the property to potential purchasers does not entitle the owner to compensation under the Fifth Amendment.

*Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 14, 104 S.Ct. 2187, 2196, 81 L.Ed.2d 1 (1984) (citations omitted). See also *Danforth v. United States*, 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939) ("A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense.") Cf. *Agins v. Tiburon*, 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 2143 n. 9, 65 L.Ed.2d 106 (1980) ("Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are 'incidents of ownership. They cannot be considered a 'taking' in the constitutional sense.'") (quoting *Danforth*). The logic is convincing that a residual decrease, if any, in the market value of the plaintiffs' property because of the application of the instant ordinance would not

constitute a taking for which the landlords would be entitled to compensation.

Plaintiffs further argue here that the Ordinance's abrogation of certain contractual rights in their present lease agreements with their tenants constitutes a special taking. As has been already explained, this position must fail. In *Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1276 (7th Cir.1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984), this circuit held that a purely contractual right was not protected under the takings clause. In that case, the right asserted was a purported contractual right to be insulated from further liability to pension plans in which the plaintiffs had participated. The court noted the difference between "property rights", which are "legally enforceable and recognizable interest[s] in distinct property", rights that are protected by the takings clause, and those that are intangible like "contract rights", which are not. *Peick*, 724 F.2d at 1275–76 (discussing *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982)). Similarly, each of the rights that the plaintiffs here allege will be "taken" by the Ordinance is an intangible contractual right pertaining to property right and not a real property right as such. Generally no Fifth Amendment taking occurs when these contractual rights are reduced. Even considering the right to have free access to enter apartments without first providing two days' notice to the tenant, I conclude that though this is more describable as a property right, its alteration is minor because of the Ordinance's allowance of no notice in case of an emergency. This causes the provision to have a *de minimus* impact on the accompaniments of the landlord's ownership and does not interfere with "distinct investment-backed expectations" sufficiently to constitute a taking. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed. 2d 631 (1978).

### Procedural Due Process

Plaintiffs claim that the City has improperly and impermissibly delegated to tenants the "unfettered discretion" to withhold and abate rent and to obtain or retain possession of a rent producing dwelling unit. This, they claim, is allowed by the Ordinance without a prior hearing before an "independent and impartial tribunal." This provision in the Ordinance is its most radical provision. Plaintiffs' claim on this Count calls into play similarly the Fourteenth Amendment to the United States Constitution, as it causes us to observe Article I, Section 2 of the Illinois Constitution.

Section 193.1–11(c) of the Ordinance provides:

**Minor defects.** If there is material noncompliance by the landlord with the rental agreement or with section 193.1–7, and the reasonable cost of compliance does not exceed the greater of $200 or one-fourth of the monthly rent, the tenant may ... notify the landlord in writing of his intention to correct the condition at the landlord's expense. If the landlord fails to correct the defect within 14 days after being notified by the tenant in writing or as promptly as conditions require in case of emergency, the tenant may have the work done in a workmanlike manner and in compliance with existing law and building regulations and, after submitting to the landlord a paid bill from an appropriate tradesman or supplier, deduct from his or her rent the amount thereof, not to exceed the limits specified by this subsection and not to exceed the reasonable price then customarily charged for such work....

Section 193.1–11(e) provides:

**Failure to provide essential services.** If ... the landlord fails to supply heat, running water, hot water, electricity, gas or plumbing, or where the structural integrity of the building is endangered, the tenant may give written notice to the landlord specifying the breach and after such notice may:

(1) procure reasonable amounts of heat, running water, hot water, electricity, gas or plumbing service, as the case may be, during the period of the land-

lord's noncompliance and upon presentation to the landlord of paid receipts deduct their cost from the rent; or

(2) recover damages based on the reduction in the fair rental value of the dwelling unit during the period of such failure and reasonable attorneys' fees; or

(3) procure substitute housing during the period of the landlord's noncompliance, ...

These sections of the ordinance justly cause the plaintiffs grave concern about their procedural due process rights as well as about the practical consequences of the enactment of the Ordinance. Considering only the ordinary legalities of the provision, a tenant's discretion to act according to the rights conferred by these provisions of the Ordinance is not unfettered. In a similar situation, the supreme court of the State of California held a municipal ordinance valid against a procedural due process attack. Quite recently, in *Fisher v. City of Berkeley*, 37 Cal.3d 644, 209 Cal.Rptr. 682, 693 P.2d 261 (1984), *aff'd*, 475 U.S. 260, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1985), a state court considered a wide range of constitutional challenges and an antitrust challenge to an initiative enacted under California law by the Berkeley electorate entitled the "Rent Stabilization and Eviction for Good Cause Ordinance." That Ordinance permitted a tenant to withhold rent if the tenant possessed a "good faith belief" that the landlord had failed to comply with his responsibilities under the ordinance. The plaintiffs, a group of landlords, argued that the "good faith belief" provision would result in arbitrary enforcement "by those who have the power to invoke it—the tenants." 209 Cal.Rptr. at 728, 693 P.2d at 307. The California court responded to this argument by stating:

Although the "good faith belief" required to invoke the provision is not a precisely measurable standard, neither is it incapable of a reasonably exact determination. The determination of whether a tenant had the requisite good faith belief at the time he withheld the rent is not to be made by the tenant; it is instead a question for the trial court, to be

decided only for the narrow purpose of establishing a defense to a landlord's eviction suit. Thus viewed in the proper context, the provision poses little threat of arbitrary application, and hence is not properly subject to facial invalidation on this ground.

209 Cal.Rptr. at 728, 693 P.2d at 307. The plaintiffs in that case also argued "that the ordinance provides them no 'due process protection' before their rents would be 'confiscated'." To this the court stated that "[a]t most, the [provision] created a substantive defense to unlawful detainer actions as a means of ensuring compliance with the ordinance." *Id.* 209 Cal.Rptr. at 729, 693 P.2d at 308. When the case got to the United States Supreme Court it affirmed the California court on the antitrust issues, 475 U.S. 260, 106 S.Ct. 1045, 89 L.Ed.2d 206. Those were the only issues before it at the time. It previously declined to hear the other issues in the case. It turned back the other issues in a statement regarding jurisdiction finding an absence of a substantial federal question. 471 U.S. 1124, 105 S.Ct. 2653, 86 L.Ed.2d 270.

Though the *Fisher* case is not in point as to the Supreme Court's ruling, I find the reasoning of the state court interesting relative to the questions presented in this case. The standards and circumstances under which a tenant may withhold rent, while not capable of precise definition in every possible circumstance, are sufficiently well spelled out so that a tenant's discretion is not unfettered. In *Fisher* the right to withhold rent and to make repairs that a landlord has not made after due notice was found to be an important part of the Ordinance's enforcement mechanism for bringing about its purpose of improving the quality of residential housing, and causing properties to meet standards set in municipal codes and in state law. In *Fisher*, it was found that the ultimate effect of the rent withholding provisions was to provide a substantive defense to an unlawful detainer action in an action in court initiated by the landlord. At this point, the landlord was found to be free to challenge the rea-

sonableness and propriety of the tenant's actions. The question here, therefore, is whether there are sufficient post-deprivation remedies for the landlords.

*Impairment of Obligation of Contract*

Plaintiffs claim that the Ordinance retroactively affects their contractual obligations and rights to an extent that is impermissible under the Contract Clause. Taking their allegations almost verbatim from their amended complaint, they claim that the Ordinance: (1) imposes on landlords and property managers the duty to repair; (2) imposes on landlords and property managers the duty to hold security deposits in certain types of interest bearing accounts; (3) imposes on property managers the obligations and liabilities of landlords for acts beyond the control of and outside the confines of the existing contracts of property managers; (4) imposes on landlords the continuing duty to provide voluminous notices, all at considerable expense; (5) imposes on landlords the duty to procure substitute tenants; (6) nullifies express terms of pre-existing contracts, including late charges in excess of $10.00; (7) deprives landlords of attorneys' fees for a suit for nonpayment of rent; (8) imposes completely unexpected liability in potentially disabling amount with no provision for gradual application and escrow accounts, among other things; and (9) makes enforcement and performance of pre-existing contracts unreasonably difficult by (a) severely restricting landlords and property managers in their right of access to their rental units and (b) limiting the presently available remedies of injured landlords.

In a case brought under the Contract Clause, a court must first determine "whether the [legislation] has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978). Legislation "does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment." *Exxon Corporation v. Eagerton*, 462 U.S. 176,

190, 103 S.Ct. 2296, 2305, 76 L.Ed.2d 497 (1983). It is also true that a person who " 'purchased into an enterprise already regulated in the particular [manner] to which he now objects ... purchased subject to further legislation on the same topic.' " *Energy Reserves Group*, 459 U.S. at 411, 103 S.Ct. at 704 (quoting *Veix v. Sixth Ward Bldg. & Loan Ass'n*, 310 U.S. 32, 38, 60 S.Ct. 792, 794, 84 L.Ed. 1061 (1940). And, the Supreme Court "long ago observed: 'One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them.' " *Energy Reserves Group*, 459 U.S. at 411, 103 S.Ct. at 704 (quoting *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908)).

■ Taking this charge as it is pleaded, only two of nine specific complaints about it allege a "pre-existing contractual right" that is affected by the Ordinance. The other seven areas of regulation appear merely to impose duties upon landlords and property managers that otherwise they would not have, by contract or otherwise. These do not touch upon the concerns of the Contract Clause. The two complaints that do allege a pre-existing contractual right concern sections 193.1–9 and 193.1–14 of the Ordinance.

■ Section 193.1–9 requires a landlord or person acting on his behalf to furnish to a tenant at or before the commencement of the tenancy the name, address, and telephone number of the owner or person authorized to manage the premises and a person authorized to receive service of process and other notices and demands. It imposes certain penalties for lack of compliance. Upon close inspection, this section on its face does not involve the disturbance of pre-existing contractual rights, unless there was an agreement between the property manager and the landlord protecting the property manager from this kind of mundane duty. And this would be extremely unlikely. Even if it were true, it would not operate as a substantial impairment of a contractual relationship.

The other challenged section, Section 193.1–14, prohibits and renders unenforceable agreements which: (1) waive or forego rights, remedies or obligations provided under the Ordinance; (2) authorize any person to confess judgment on a claim arising out of the rental agreement; (3) limit liability otherwise arising under law or provide indemnity in connection with that liability or with the associated costs; (4) waive written notice of termination or service of such notice provided under state law or the Ordinance; (5) waive the right to jury trial; (6) provide for attorney fee shifting except as provided for by court rule, statute or ordinance; (7) provide for one side having a shorter notice period to terminate the tenancy than the other side has, unless this provision is disclosed in a separate notice; and (8) provide for a late fee in excess of $10.00.

▇▇▇ There is a serious question whether these provisions work a substantial impairment to an existing contractual relationship. See *Troy Ltd. v. Renna*, 727 F.2d 287, 297 (3rd Cir.1984); *City of Evanston v. Create, Inc.*, 85 Ill.2d 101, 51 Ill.Dec. 688, 421 N.E.2d 196 (1981); *Rue-Ell Enterprises, Inc. v. City of Berkeley*, 147 Cal. App.3d 81, 194 Cal.Rptr. 919 (Cal.App. 1983). Assuming without deciding, however, that these provisions of the Ordinance operate as a substantial impairment of a contractual relationship, plaintiffs have failed to allege facts showing that there is no "significant and legitimate public purpose to be served by these provisions, or that these provisions are incapable of effecting the public purpose defendants claim justify them."

### Interference with Interstate Commerce

▇▇▇ Plaintiffs next claim is that Section 193.1–8(a), which requires landlords to hold all security deposits received from tenants "in a bank, savings and loan association or other financial institution located in the State of Illinois", violates the Interstate Commerce Clause (Article I, Section 8 of the United States Constitution). This question is always addressed by examining the nature of the burden on interstate commerce against local benefits to be derived from that burden. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). "[W]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits ... If a legitimate purpose is found, then the question becomes one of degree." *Pike*, 397 U.S. at 142, 90 S.Ct. at 847.

The defendants state that the purpose of this section is to keep a security deposit, which remains a tenant's property, within the reach of the tenant. They claim that this will prevent the depositing of a security deposit in an out-of-state account, forcing a tenant who has been awarded the security deposit to go to the substantial expense of establishing long-arm jurisdiction over an out-of-state bank to effect a return of the deposit. This section of the Ordinance attempts to facilitate swift return of the tenant's money when necessary.

The Ordinance regulates evenhandedly; it is not the kind of "economic protectionism" that the Supreme Court struck down in *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) (economic protectionism is invalid *per se*). It is instead much more like the law upheld by the Court in *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 78, 66 L.Ed.2d 659 (1981) (legislation that banned for environmental reasons certain types of milk containers not invalid merely because it also provided a benefit to local industry). I note particularly that under the instant Ordinance the security deposits remain the property of the tenant.

### Unconstitutional Denial of Access to Courts

▇▇▇ Plaintiffs next claim that Sections 193.1–13(a) and 193.1–15 of the Ordinance deny them their fundamental right of access to the courts in violation of the Fourteenth Amendment. Section 193.1–13(a) provides that if a landlord accepts a pay-

ment of rent knowing that the tenant is otherwise in default the landlord waives his right to terminate the rental agreement. Section 193.1–15 is a provision much like that found in Ill.Rev.Stat. ch. 80, para. 71. It prohibits a landlord from retaliating against a tenant because he exercised any one or another of the rights and remedies provided by the Ordinance. It also creates a rebuttable presumption that the landlord's conduct is retaliatory if there is evidence that the tenant utilized any of the provisions of the Ordinance within the prior year.

The ultimate effect of this provision may be to encourage among tenants a significant amount of lawless behavior. And it fails to state what kind of showing a landlord must make to overcome the rebuttable presumption of retaliation. Further, it fails to indicate whether the presumption arises whenever a tenant attempts to exercise a right but does so improperly.

However, neither section denies plaintiffs an opportunity to be heard. See *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). But Section 193.1–13(a) does put the landlord in a position of having to elect between two unrewarding alternatives: either he maintains an action for possession, or he accepts the payment and keeps the tenant. *42 U.S.C. § 1983 and the Real Estate Broker's Preemption*

■ Finally, plaintiffs allege two charges which are more summary and procedural than substantive. They allege a civil rights violation under 42 U.S.C. § 1983. See *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979). This pleading, of course, gives clear federal jurisdiction, and provides a means for which the plaintiffs can later seek damages and costs for having brought this action. The other charge is that the Ordinance attempts to regulate the activity of real estate brokers in the area of an exclusive state function retained by the state legislature in the Real Estate License Act of 1983. Ill.Rev.Stat. ch. 111, paragraphs 5801–5835. In examining the stat-

ute cited by the plaintiffs in support of this later claim, Ill.Rev.Stat. ch. 111, sections 5801 & 5833, it is apparent that the Illinois statute is principally concerned with the evaluation, licensing, and regulation of real estate brokers and salesmen, and does not attempt to regulate landlord-tenant relationships or the profession of owning or managing rental housing. The Ordinance does not appear to intrude on an exclusive state function. See *City of Evanston v. Create, Inc.*, 85 Ill.2d 101, 108, 51 Ill.Dec. 688, 421 N.E.2d 196 (1981).

### Conclusion

I have reviewed in the order presented each of the questions raised by the plaintiffs as to the constitutionality of this so-called tenant's rights Ordinance. It appears to me a harsh and revolutionary legislative step, taken in part presumably to cure an imbalance of power between suppliers and consumers in the market of rental residential housing in Chicago in which, because the twentieth century phenomenon of metropolitanization has left it predominantly a city of tenant dwellers and not a citadel of property owners.

The Ordinance is harsh because it casts upon non-resident rental property owners the profile of dishonesty. Many of these same people are doubtless among the finest renters of residential properties in the country. The Ordinance is revolutionary because it displaces traditional zones of contractual relationships in a manner that will cause the profession of developing and maintaining residential properties to lose value—both in the reputation of the members of the profession and in the properties they own. The Ordinance is dangerous because by providing a system of self service to consumers it invites excesses and will increase tensions between the consumers and suppliers which can lead to repeated and unpredictable incidents of property mistreatment and civil disorder.

If it were my job to evaluate the wisdom of the Ordinance I would grade it highly questionable if not substantially inadvisable. But the role of determining the constitutionality of the Ordinance is not that of

approving its worth. The statute books contain many inadvisable laws and ordinances that nevertheless pass constitutional muster. And in our Constitutional system of the separation of powers between three distinct branches of government, it is the legislative branch that addresses the questions of value and wisdom in these matters, until and unless it can be said in the application of the Ordinance that the Constitution has been violated. As the Supreme Court has stated: In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed. 2d 511 (1976). Our democratic system of government confers these questions upon elected representatives of the people, and where a challenged enactment appears unwise, it is to be expected that ultimately this will be addressed by the legislative branch.

Three areas of the Ordinance would fail a literal reading of the Constitution. These are the classification imposed by the Ordinance, the self help remedies the Ordinance provides, and the provision concerning the presumption of retaliation. They happen to be in the areas that most likely will lead to trouble in its administration. And these areas survive only on the language used by the higher courts, by the Supreme Court in particular, in interpreting these Constitutional provisions. These mandates I must follow: if any set of facts can conceivably sustain a legislative classification it should be allowed, *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); and, the legislative exercise of police power by the City of Chicago to promote the health, welfare and safety of its citizens must be viewed with a presumption of validity. Here the plaintiffs have failed to plead any set of facts that would be sufficient to overcome that presumption. *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Furthermore, it appears that the plaintiffs will not be denied procedural due process because they have reasonably adequate pre-deprivation remedies and post-deprivation remedies in which they are free to challenge in court the questionable actions of their tenants.

In summary, I do not find that the challenged provisions to be clearly arbitrary and unreasonable, nor do I find them to be a greater exercise of the police power of the City than is permitted under constitutional standards. *Miller v. City of Chicago*, 774 F.2d 188 (7th Cir.1985). Because I do not conclude that the plaintiffs have a reasonable likelihood of prevailing on the merits of their complaint, I must deny their motion for Preliminary Injunction and vacate the Temporary Restraining Order forthwith. I am also prepared to, on motion of the plaintiff, certify this matter for an immediate appeal.