**Boston M. CHANCE and Louis C. Mercado, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**The BOARD OF EXAMINERS et al., Defendants.**

**No. 70 Civ. 4141.**

United States District Court, S. D. New York.

Oct. 26, 1970.

Jack Greenberg and Jonathan Shapiro, New York City, for plaintiffs; George Cooper, Elizabeth B. Dubois, and Stephen G. Young, New York City, of counsel.

Frankle & Greenwald, New York City, for Council of Supervisory Associations of Public Schools of New York City; Leonard Greenwald, New York City, of counsel.

MANSFIELD, District Judge.

In this suit challenging the procedures and tests required by the Board of Education to obtain a permanent appointment to supervisory positions within the New York City public school system, the Council of Supervisory Associations of the Public Schools of New York City (hereinafter "CSA") seeks to intervene. For the reasons discussed below, this motion is denied.

The CSA seeks intervention as of right, under Rule 24(a) (2), which provides:

"Upon timely application anyone shall be permitted to intervene in an action * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Plaintiffs are two acting principals of public schools in New York City. Each has qualified under New York State law for the position of principal and holds a New York State certificate. However, in order to qualify for permanent appointment to the position of principal in New York City each is presently required to obtain a New York City license in addition to his state license. A New York City license is issued by the Board of Education of New York City only to those who pass certain tests and examinations prepared and administered by the Board of Examiners. If plaintiffs fail to pass these tests they will be barred from appointment as permanent principals in New York City even though their state licenses would qualify them for appointment outside of New York City.

Plaintiffs attack the New York City testing procedures on various grounds, the principal of which are that they are biased against black people and Puerto Ricans and that the procedures are unrelated to the functions of the supervisory positions for which the tests are given.

CSA is the collective bargaining agent for supervisory personnel, including principals, who have already become eligible for appointment. CSA represents them in negotiations with respect to such important matters as salaries, welfare benefits, pensions, retirement program, working conditions, leaves of absence, grievance procedures and the like. It does not appear to have been autho-

rized to represent or negotiate on behalf of any members with respect to examinations for licenses as principals, testing procedures for such offices, or the like. Nor does it appear that it has ever done so. Indeed, since its members have all qualified under the existing New York City testing and examination requirements here under attack, they would not appear to have any personal interest in changing or relaxing the requirements for new applicants. In short, CSA's function and activities on behalf of its members commenced after its members have become eligible for regular membership in its constituent organizations by qualifying for licenses as supervisory employees or members, and not before.

■ Since plaintiffs' motion for a preliminary injunction, if granted, will only affect future examinations and the hiring of future personnel, the members of the CSA do not have an "interest" in the subject matter of the *Chance* action of a type entitling them to intervene pursuant to Rule 24(a) (2). They have already secured their positions and the *Chance* suit, whatever its disposition, will not affect them. Moreover, the CSA has shown us no reason to assume that it has any express or implied authority to represent its members in the *Chance* suit. Nothing in the labor agreement between the Board of Education of the City of New York and the CSA indicates the existence of any such authority and we have not been shown any valid reason why CSA should represent its members in matters relating to the testing procedures of future supervisory personnel.

CSA relies on only three cases to support its view; all are inapplicable. In Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), the court allowed the State of California and Southern California Edison Co. to intervene and oppose a Government consent decree in an antitrust action. California, the court noted, is a state where the anti-trust offender, El Paso, sold most of its gas; and California was vitally concerned that the consent decree would not restore competition for the gas that it and its citizens purchased. See *id.* at 132, 135, 87 S.Ct. 932. Southern Edison was a large industrial user of natural gas purchased from El Paso's sources. The interest of CSA in no way approaches the interest of the interveners in the *El Paso* case.

Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 61 S.Ct. 666, 85 L.Ed. 975 (1941), also cited by CSA, was discussed by the court in *El Paso*. A security holder of a company which was supposed to be protected by a consent decree was allowed to intervene on the company's behalf. Not only did the security holder have a real interest in the litigation, but the court noted the special circumstances that intervention was needed to protect the private party in the enforcement of the public law, and that the foundation of the intervention was not Rule 24(a) of the Federal Rules but rather the peculiar provisions of the consent decree. *Id.* at 506, 61 S. Ct. 666.

Finally, CSA relies on United States v. Simmonds Precision Products, Inc., 319 F.Supp. 620 (S.D.N.Y.1970), where the court permitted a labor union to intervene for the purpose of opposing the entry of a final judgment on a consent decree in an antitrust case. CSA neglects to mention that the court's opinion clearly states that the union sought intervention in order to protect the job security of its members. *Id.* at 621. As we noted earlier, there is no danger to the job security of the CSA members if the *Chance* plaintiffs would be successful in their suit.

■ Even if CSA had a legal interest in the subject matter of the *Chance* dispute, we would still be required to deny their motion to intervene because we find that CSA's alleged interest will be more than adequately represented by ex-

isting parties. Plaintiffs have served process in this suit upon the Board of Examiners and its members—individually and in their capacities as members of the Board. The Board is retaining independent counsel to defend the suit. CSA has given us no valid reason for believing that counsel retained by the Board of Examiners will not be able competently to defend this suit.

It is so ordered.