The VULCAN SOCIETY OF WESTCHESTER COUNTY, INC., Hubert Robinson, Joseph Miles, James Garland, Buel McQuay, Henry Cleveland, and Robert P. Gray, III, Plaintiffs,

v.

FIRE DEPARTMENT OF the CITY OF WHITE PLAINS, Fire Department of the City of Mount Vernon, Fire Department of the City of New Rochelle, Fire Department of the City of Yonkers, White Plains Department of Personnel, New Rochelle Civil Service Commission, Mount Vernon Civil Service Commission, Yonkers Municipal Civil Service Commission, Alfred Delvecchio, as Mayor of the City of White Plains, Joan Bolce, as Commissioner of Public Safety of the City of White Plains, John Gapco, as the Personnel Officer of the City of White Plains, William Mc Mahon, as Fire Chief of the Fire Department of the City of White Plains, Thomas E. Sharpe, as Mayor of the City of Mount Vernon, Joseph Hammond, as Commissioner of the Fire Department of the City of Mount Vernon, James Jubilee, as President of the Civil Service Commission of the City of Mount Vernon, Edward Dunn, as Fire Chief of the Fire Department of the City of Mount Vernon, Vincent R. Rippa, as Mayor of the City of New Rochelle, Walter F. Bell, as Commissioner of the Fire Department of the City of New Rochelle, Nora Manyai, as Administrator of the Civil Service Commission of the City of New Rochelle, Donald Baxter, as Deputy Chief of the Fire Department of the City of New Rochelle, Angelo Martinelli, as Mayor of the City of Yonkers, Susan Newman, as Civil Service Administrator of the City of Yonkers, Wallace Brown, as Fire Chief of the Fire Department of the City of Yonkers, New York State Department of Civil Service, Victor S. Bahou, as President and Commissioner of the New York State Department of Civil Service, and Josephine J. Gambino, as Commissioner of the New York State

Department of Civil Service, Defendants.

No. 78 Civ. 911 (RWS).

United States District Court,
S. D. New York.

July 26, 1978.

Teitelbaum & Hiller, New York City, for plaintiffs; Richard J. Hiller, Herbert Teitelbaum, New York City, of counsel.

Belson, Connolly & Belson, New York City, for applicants for intervention; John J. Connolly, New York City, of counsel.

Eugene J. Fox, Corp. Counsel, Yonkers, N. Y., for defendants.

Paul B. Bergins, Corp. Counsel, White Plains, N. Y., for White Plains defendants.

McGovern, Connolly & Davidson, New Rochelle, N. Y., for New Rochelle defendants.

Rains, Pogrebin & Scher, Mineola, N. Y., for Mt. Vernon defendants.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, Mark C. Rutzick, Asst. Atty. Gen., New York City, for State defendants.

## OPINION

SWEET, District Judge.

This is an action in which plaintiff is seeking to end certain alleged racial discrimination in several fire departments in recruitment, hiring, promotion, salary, responsibility, and other terms and conditions of employment. Plaintiffs represent certain black firefighters alleged to have been the subject of these discriminatory practices. Defendants are, *inter alia*, the cities whose fire departments are the subject of this suit. This motion was brought on by the four labor organizations (unions) which represent the firefighters and fire officers * in the respective municipalities in collective bargaining and other matters. Such unions seek intervention into this action as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2). Therefore, in order to intervene the unions must establish that (i) they have an interest relating to this action, (ii) the disposition of the action may impair or im-

* Yonkers local 628 does not represent fire officers in collective bargaining.

pede the unions' ability to protect that interest and (iii) that the unions' interest is not adequately represented by existing parties. For the reasons set forth below this court holds that the unions have met these tests and therefore must be allowed to intervene.

### INTEREST IN THE ACTION

The unions here have an interest in this action within the collective bargaining spectrum. In paragraph 30 of the Amended Complaint plaintiffs allege that the "defendants have discriminated and continue to discriminate . . . on the basis of race in recruitment, hiring, promotion, salary, responsibility and other terms and conditions of employment." Subsection (g) of this paragraph goes on to allege that the "[m]unicipal defendants have discriminated against current black fire department employees by giving them less responsibility, less desirable assignments, and less job benefits than similarly qualified white fire department employees." Plaintiffs further attack the written examinations prepared and administered by the New York State Department of Civil Service as being discriminatory. Plaintiffs request this court to correct these alleged discriminatory practices.

The collective bargaining agreements between the unions seeking to intervene and the defendant municipalities set forth the results of their negotiation and include provisions relating to salaries, assignments and benefits. Should plaintiffs' allegations be established, modification of these terms would be within the scope of possible relief sought by plaintiff.

Relevant provisions in specific agreements which could also be affected include:

(1) City of Yonkers—Local 628:

(i) Article VII, Section 1

Maintenance and Continuation of All Other Benefits: The City agrees that it will not diminish or revoke any benefits or other provisions heretofore negotiated for or granted to the members of the Union not specifically referred to in this contract and which are in existence on the date of the signing of this agreement and which are presently effective either by State laws, local laws, ordinances or resolution or departmental rules and regulations or departmental orders or contained within the budget of the City of Yonkers, or exist by reason of usage or custom within the department.

(ii) Article X, Section 1

Management Responsibility: The City, as public employer, reserves to itself all rights not specifically granted to the employee organization under the provisions of the Public Employees' Fair Employment Act (as presently or hereafter amended) or in this agreement and not inconsistent with Civil Service Laws or other laws. The rights so reserved to the City include the control of its facilities and the maintenance of order and efficiency, but that such rights are subject to such conditions, requirements and limitations as may be applicable under law, and must be exercised consistently with the other provisions of this agreement. These rights include the following:

\* \* \*

6. To make rules, regulations and policies concerning personnel procedures and practices, subject, however, to the procedures described in the following:

The Fire Chief will consult and confer with the Union prior to promulgation of all changes in the Rules and Regulations of the Fire Department affecting the terms and conditions of employment, other than those provided herein.

(2) City of New Rochelle—Local 273:

(i) Article 3, Section 2

The EMPLOYER agrees that during the term of this AGREEMENT no past or present practice or term or condition of employment now in existence although not specifically covered by the terms of this AGREEMENT shall in any manner be impaired or diminished. It is the intention of the parties hereto

that the foregoing sentence includes the provisions of any ordinances of the City of New Rochelle as have heretofore been or may hereafter be adopted by the City Council of the EMPLOYER.

The New Rochelle City Charter, as approved by the City Council, states as follows:

### SECTION 61. APPOINTMENT AND PROMOTION.

All appointments and promotions of officers and members of the uniformed forces of the Police and Fire Departments shall be made by the Director of Police and the Fire Chief for their respective departments with the approval of the City Manager in the manner prescribed by the Constitution of the State of New York and in accordance with provisions of the Civil Service laws of the State of New York.

All promotions shall be made on the basis of seniority, meritorious service in the Departments and superior capacity as shown by competitive examinations. Enacted as Local Law No. 1 of 1964 (January 8, 1964). Amended by Local Law No. 3 of 1970 (June 8, 1970).

(3) City of White Plains—Local 274:

(i) Article II

The City retains the exclusive right to plan, determine, direct and control or change the nature and extent of the operations of the Fire Department and to make decisions which are properly a part of management or a prerogative of the Commissioner of Public Safety, included but not limited to the promotion of a member of the Fire Department from one classification to another, the assignment of fire fighters and other employees of the Department from one command to another, and direct the manner of the performance of such duties, right to amend the rules, regulations and orders of the Fire Department, except that said rules, regulations and orders shall not conflict with the terms and conditions of this Agreement and provided that such plan, determination, direction and control of a change or amendment shall not be made in a discriminatory manner and shall not violate any provisions of this Agreement. Any prerogatives, rights or powers not specifically relinquished by this Agreement are retained by the City.

(4) City of Mount Vernon—Local 107:

(i) Article XX

The City shall apply to the Civil Service Commission for the appropriate promotion test to be given in order to have a list in existence for each position in the Fire Department.

Intervention by a union has been allowed when provisions of its collective bargaining agreement may be modified or invalidated by a consent decree or court order. *See E. E. O. C. v. A. T. & T. Co.,* 506 F.2d 735, 741–42 (3d Cir. 1974); *see also Stallworth v. Monsanto Co.,* 558 F.2d 257, 268–69 (5th Cir. 1977). In *Chance v. Board of Examiners,* 51 F.R.D. 156 (S.D.N.Y.1970) intervention was not allowed to the collective bargaining agent. However, in that instance the union represented only supervisory personnel, those who had already passed the licensing requirements under attack by those seeking supervisory positions. In the instant action the unions represent, with the one exception noted above, both those seeking and those who have attained officer status within the fire departments. Furthermore, in *Chance* when a possible conflict arose between the orders of the court and certain provisions of the union's agreement, the court allowed counsel to informally participate in the proceedings—what the court termed as limited intervention. *Chance v. Board of Examiners,* 7 E.P.D. ¶ 9084 at 6576 (S.D.N.Y.1973). Therefore, although intervention had earlier been denied based on a finding that the unions did not have an interest in the action, when such an interest became apparent the union was given a full opportunity to be heard and was heard. *Id.* As set forth above, the unions here have demonstrated an interest in this action.

In *Afro American Patrolmen's League v. Duck,* 503 F.2d 294, 296 (6th Cir. 1974) the

court disallowed intervention not because the unions had no interest, but because it found that the 15 white patrolmen who had been permitted to intervene adequately represented any interest they may have had. In *Rios v. Enterprise Associate Steamfitters,* 520 F.2d 352 (2d Cir. 1975), intervention was sought after the court had entered its order. The Second Circuit, in interpreting the court's order, held that the applicants had no "significantly protectable interest" in the litigation; this was based upon a determination that the order did not affect the rights of the applicants. However, here the application is prior to an order or possible consent decree which could affect the rights of the unions. Therefore, the applicants have an interest relating to this action.

## THE DISPOSITION OF THIS ACTION MAY AFFECT THE UNIONS' ABILITY TO PROTECT THEIR INTEREST

The applicants' interest can best be protected at this stage, prior to any final determination by this court or any consent decree entered into among the parties. Fed.R.Civ.P. 24(a)(2) requires only that the applicants establish that the disposition of this action may impair or impede their ability to protect their interests. The applicants will have a more difficult task protecting their collective bargaining agreements and assuring adequate hiring and promotion standards after an order of this court or after a consent decree than they would have prior to the existence thereof. *See generally Alaniz v. Tillie Lewis Foods,* 572 F.2d 657 (9th Cir. 1978). Therefore, this second element has been met.

## THE UNIONS' INTERESTS MAY NOT BE ADEQUATELY REPRESENTED BY EXISTING PARTIES

Unlike the situation in *Afro American Patrolmen's League v. Duck, supra,* there are no individual intervenors here who represent the same interests as those of the unions. Although the municipalities involved have the same interest in seeking qualified and efficient fire personnel, it could hardly be said that all the interests of the union applicants are the same as those of the municipalities. This court would be hard pressed to find that the employers of the unions, with whom the collective bargaining is done, would represent the interests of the unions in these agreements and otherwise with the same vigor and advocacy as would the unions themselves.

Based upon the foregoing, the applicants' motion is granted and intervention allowed—upon the express condition, agreed upon in open court, that such intervention will not offset the pretrial schedule previously determined.

SO ORDERED.