In the Matter of the Application of CBS INC., Neal Pilson, and Ted Shaker, Petitioners,

v.

James SNYDER, Respondent.

No. 91 Civ. 1222 (WCC).

United States District Court, S.D. New York.

May 10, 1991.

Douglas P. Jacobs, New York City, for petitioners; Anthony M. Bongiorno, of counsel.

Liddle, O'Connor, Finkelstein & Robinson, New York City, for respondent; Jeffrey L. Liddle, Barbara R. Shweky, Danielle Negroni, of counsel.

Cohen, Weiss and Simon, New York City, for intervenor, American Federation of Television and Radio Artists; Susan Davis, Russell Hollander, Thomas Ciantra, Peter DeChiara, of counsel.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This is an action in which petitioners, CBS, Inc. ("CBS") and two of it managerial employees, Neal Pilson and Ted Shaker, seek to stay labor arbitration initiated by James "Jimmy the Greek" Snyder. The arbitration arises out of CBS's January, 1988 termination of the employment of Mr. Snyder, a well-known football analyst and sports commentator. Snyder has sought arbitration pursuant to a collective bargaining agreement between CBS and the American Federation of Television and Radio Artists ("AFTRA"), the AFTRA National Code of Fair Practice for Network Television Broadcasting (the "National Code").

On or about March 5, 1991, AFTRA made a motion pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure for an order allowing it to intervene in the proceeding. AFTRA seeks to obtain a stay of that portion of Snyder's arbitration that asserts claims against individual AFTRA members who are allegedly non-signatories to the National Code. AFTRA also seeks an order that an arbitrator, rather than this Court, determine whether or not Snyder's claims are time-barred, as CBS contends.

Although Snyder initially sought to arbitrate claims against CBS, Pilson and Shaker, Brent Musberger and Pat O'Brien (two CBS broadcasters who are also members of AFTRA), WRC–TV (a Washington, D.C. television station) and Ed Hotaling (a reporter and AFTRA member employed by WRC–TV), the American Arbitration Association, by letter dated March 7, 1991, dismissed from the arbitration all individual defendants and WRC–TV because there was no evidence of an agreement to arbitrate these claims. Accordingly, AFTRA's argument in support of a stay of that portion of Snyder's arbitration that asserts claims against individual AFTRA members Musberger, O'Brien and Hotaling is now moot, as is AFTRA's motion to intervene on that basis.[1] Thus, the only remaining

---

1. By letter of March 15, 1991, Snyder's counsel informed this Court that it intended to contest

basis upon which AFTRA seeks to intervene in this proceeding is to support its argument that an arbitrator, rather than this Court, must determine whether or not Snyder's claims are time-barred.

For the reasons set forth below, AFTRA's motion to intervene pursuant to Rule 24(a)(2) is granted. This Court reserves judgment on AFTRA's motion for entry of summary judgment in favor of AFTRA compelling arbitration of the timeliness issue until such time as this Court considers CBS's motion to stay arbitration.

## BACKGROUND

During an interview conducted on January 15, 1988 by Ed Hotaling, a reporter for WRC–TV ("WRC"), a local television station in Washington, D.C., Snyder made various remarks concerning the role of black athletes in sports. Shortly after the interview was aired, CBS terminated Snyder's employment and issued several statements disassociating itself from his remarks. These statements were read on the air by Pat O'Brien and Brent Musberger. Snyder claims to have suffered substantial damages as a result of the termination and allegedly defamatory statements made thereafter by CBS, O'Brien, and Musberger.

Approximately three years after such termination, in January, 1991, Snyder served an arbitration demand on CBS, various former and present CBS employees including Musberger and O'Brien, WRC–TV, and Hotaling. Snyder alleged a variety of tort claims such as defamation, business disparagement, injurious falsehood, interference with contractual relations and interference with economic advantage. He also alleged a breach of contract claim against CBS and CBS Sports President Neal Pilson, based on the network's failure to honor its alleged promise to exercise a one-year renewal option on Snyder's employment contract.

Shortly after the arbitration demand was served, on or about January 22, 1991, CBS and two managerial employees, Neal Pilson and Ted Shaker, petitioned in New York State Supreme Court to stay the arbitration on the grounds that: (1) AFTRA had not endorsed the arbitration demand as required by Article 95(a) of the National Code;[2] (2) there was no agreement to arbitrate claims against Pilson and Shaker; and (3) Snyder's claims were time-barred under New York law.

On February 4, 1991, WRC–TV, Ed Hotaling and "unnamed employees" of WRC–TV filed a similar action in New York State Supreme Court to stay the arbitration. In addition to asserting claims identical to CBS's first and third claims, they claimed that neither WRC–TV nor Hotaling was a signatory to the National Code and that the alleged conduct for which relief was sought in arbitration was not covered by the National Code. By Notice of Removal dated February 27, 1991, Snyder removed the WRC–TV action to this Court. On April 1, 1991, as a result of the American Arbitration Association's March 7, 1991 refusal to endorse arbitration demands against any of the individuals or WRC–TV, Hotaling, WRC–TV, and the "unnamed employees of WRC–TV" voluntarily dismissed their action pursuant to Fed.R.Civ.P. 41(a)(1).

By Notice of Removal dated February 20, 1991 Snyder removed the action filed by CBS to this Court. On March 8, 1991, CBS filed a motion in this Court seeking an

the American Arbitration Association's dismissal of the arbitration against Musberger, O'Brien and Hotaling and that, therefore, AFTRA's motion to stay the arbitration against individual AFTRA members might not be moot. Should Snyder effectively contest the American Arbitration Association's dismissal of the arbitration against these individuals, resulting in the Association reinstating the arbitration against them, AFTRA may then again attempt to intervene to stay the arbitration. At this time, however, this Court finds AFTRA's argument in support of a

stay of arbitration against individual AFTRA members moot.

**2.** Article 95(a) provides in relevant part that an individual member may request arbitration "with the written consent of AFTRA endorsed upon the demand for arbitration." Declaration of Helayne Antler ("Antler Decl.") at ¶ 6. On February 21, 1991, at Snyder's request, AFTRA endorsed an arbitration demand against CBS. Antler Decl. at ¶ 9. It has not endorsed demands against any of the individuals or WRC.

order pursuant to 28 U.S.C. § 1447(c) remanding this action to state court. By Order and Opinion dated April 29, 1991 this Court denied CBS's motion to remand.

## DISCUSSION

The subject matter of the lawsuit removed to this Court involves CBS's action to stay portions of a labor arbitration brought by Snyder pursuant to the National Code. In determining the merits of CBS's petition this Court will consider, *inter alia*, whether a question of timeliness that is raised by an arbitrable grievance should be resolved in arbitration or by a court. If this Court determines that the issue is best resolved judicially, it will decide whether Snyder's claims are time-barred.

 Rule 24(a) of the Federal Rules of Civil Procedure provides, in relevant part:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

To satisfy this rule, an applicant seeking to intervene must demonstrate that: (1) it has an interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may impair or impede the applicant's ability to protect that interest; and (3) the applicant's interest is not adequately represented by the existing parties. *Vulcan Society of Westchester County, Inc. v. Fire Dept. of White Plains*, 79 F.R.D. 437, 438–39 (S.D. N.Y.1978). The nature of the applicant's interest and the effect that the disposition of the action may have on his ability to protect that interest are intimately related and will be examined in tandem.

 AFTRA is a national labor organization with more than thirty affiliated local unions throughout the United States. AFTRA represents over 67,000 members who work in radio, television and related industries. Antler Decl. at ¶ 4. At all times relevant herein, James Snyder, who is seeking arbitration in this case, was a member of AFTRA. *Id.*

AFTRA asserts that, to date, no court has ever held that a state statute of limitations, rather than federal labor law, governs the National Code and that so to rule would contravene settled principles of federal labor law. AFTRA Memo at 21. AFTRA contends that a decision by this Court on whether a court, rather than an arbitrator, should decide if a particular arbitration claim is time-barred, is a matter of grave concern to AFTRA and has far-reaching implications for the more than 67,000 members subject to the National Code. AFTRA maintains that its interest in administering and enforcing the collective bargaining agreement which it negotiated with the networks may be impaired by the instant action. Moreover, AFTRA contends, any consideration of the timeliness of Snyder's grievances would require interpretation and application of the National Code, as well as the relevant bargaining history and past practice of the parties.

Snyder argues that AFTRA has no interest in the property or transaction which is the subject of this proceeding and cannot intervene merely because Snyder seeks to arbitrate pursuant to the National Code.[3] Snyder asserts that in the instant action the court will merely determine whether the court or the panel of arbitrators should decide whether Snyder's claims are time-barred. Snyder argues that this Court will not have to refer to the National Code and that its determinations will in no way affect the enforceability of the National Code.

The collective bargaining agreement negotiated between AFTRA and the national networks sets forth the results of their negotiation and includes a provision for the arbitration of claims. AFTRA argues that Article 95 of the 1985–1988 National Code,

---

3. Pursuant to Article 95(d) of the National Code, AFTRA is an *ex officio* party to all arbitration proceedings brought pursuant to the National Code in which any artist is involved.

under which Snyder's claim arose, requires arbitration of disputes "between any Producer and AFTRA or between any Producer and any member of AFTRA" arising out of, or in connection with, the National Code, and contains no time limits for the initiation of arbitration by either AFTRA, a producer or an artist. Antler Decl.Ex.A. AFTRA notes that in the collective bargaining negotiations concerning the successor agreement, the 1988–91 National Code, the national networks submitted a proposal which sought to amend Article 95 to provide that a party requesting arbitration must do so within the earlier of twelve months after it learned of the contract breach or eighteen months after the dispute arose. Antler Decl. at ¶ 7; Antler Decl. Ex. B. During the course of the negotiations, the networks ultimately withdrew this proposal. Antler Decl. at ¶ 7. Hence, the 1988–1991 National Code, like its predecessor, contains no express time limits for raising claims in arbitration. *Id.*

If CBS prevails in its argument that a court, rather than an arbitrator, may determine whether an arbitration demand is barred by a state statute of limitations, AFTRA may lose the benefit it alleges to have bargained for and obtained: an arbitration provision that contained no express time limit for initiating arbitration. In view of the absence of an express provision in Article 95 limiting the time for filing grievances and in light of the parties' bargaining history, it is plausible that the parties to the National Code intended that there be no time limitation imposed upon the initiation of arbitration claims. Should this Court grant CBS's stay application on the basis of a state statute of limitations, the contract provisions that AFTRA alleges to have negotiated will be rendered a nullity and "CBS [will] in effect ... obtain

through litigation the limitations period that it was unable to obtain at the bargaining table." AFTRA Memo at 23. This Court concludes that AFTRA has a legally protectible interest in participating in a proceeding, such as this one, which may affect the interpretation and/or enforceability of the arbitration provisions contained in the National Code and which may impair severely AFTRA's interest as the exclusive bargaining representative of the television and radio artists covered by the National Code. The Court accordingly recognizes AFTRA's right to intervene, pursuant to Fed.R.Civ.P. 24(a)(2).[4] *See Vulcan Society,* 79 F.R.D. at 439–41; *accord EEOC v. American Tel. & Tel. Co.,* 506 F.2d 735, 741–42 (3d Cir.1974).

A party seeking to intervene in an action must show that the representation of its interests may be inadequate. The burden of making that showing *"should be treated as minimal."* New England Petroleum Corp. v. Federal Energy Admin., 71 F.R.D. 454, 458 (S.D.N.Y.1976) (emphasis in original) (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972)). The burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention. *Id.; accord United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1293 (D.C.Cir.1980); 7C Wright Miller and Kane, *Federal Practice and Procedure,* § 1909 at 314–315.

In the instant case, AFTRA's interests diverge from those of CBS and James Snyder. AFTRA and CBS disagree over whether this Court or an arbitrator should determine the timeliness of Snyder's grievance and over which law applies. Similarly, while AFTRA and Snyder agree that a state statute of limitations should not govern the instant dispute, and that an arbitra-

---

**4.** Snyder argues that the cases cited by AFTRA permit a labor union to intervene in an action only where the outcome of the litigation could modify or invalidate provisions of a collective bargaining agreement and that they are inapposite to the present case which, at most, may call for an interpretation of the collective bargaining agreement.

 AFTRA, however, argues that the court may modify or invalidate portions of the National

Code in determining whether or not Snyder's claims are time-barred. AFTRA contends that the absence of an express provision regarding the statute of limitations in Article 95 of the National Code is to be interpreted as the absence of a time limit. For this Court to determine that the applicable statute of limitations is that of New York state is to modify or invalidate that portion of the National Code.

tor should decide the timeliness issue, they disagree on which federal law to apply.[5]

While various parties to this action have asserted claims similar to those which AFTRA now seeks to raise, no party is equipped to assert AFTRA's broad institutional interests as exclusive collective bargaining representative responsible for administering the National Code on behalf of over 67,000 members. AFTRA is in a unique position to offer its interpretation of the National Code, the negotiations which preceded it, and the rights arising thereunder, and to brief this Court concerning past administration of Article 95 and other relevant provisions of the National Code. This Court accordingly rules that AFTRA may intervene in this action and present its views to this Court.

### CONCLUSION

For the reasons set forth above, AFTRA's motion to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2) is granted.

SO ORDERED

---

**5.** Snyder relies on commercial arbitration decisions subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (Respondent's Memorandum of Law in Opposition to Motion to Stay Arbitration at 9–10). AFTRA argues that the federal labor law developed under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) controls and that under this body of law, an arbitrator, rather than this Court, should determine the substantive and procedural merits of Snyder's grievance.