**John MILLER, Kings Heights Associates, Linda Bloom, Michael Laub, Gunilla Knutson, Mann Realty Associates, 22–24 Elliot Associates Ltd., and Carol Management Corporation, on behalf of themselves and a class consisting of all others similarly situated, and the Rent Stabilization Association of N.Y.C., Inc., Plaintiffs,**

v.

**Jacqueline W. SILBERMANN, individually and as Administrative Judge of The New York City Civil Court, Israel Rubin, individually and as former Administrative Judge of the New York City Civil Court, Albert Rosenblatt, individu-**

ally and as former Chief Administrative Judge of the Unified Court System, Matthew T. Crosson, individually and as Chief Administrator of the Courts, Milton L. Williams, individually and as Deputy Chief Administrative Judge for the New York City Courts, Jack Baer, individually and as Chief Clerk of the New York City Civil Court, Sol Wachtler, individually and as former Chief Judge of the Unified Court System, Richard D. Simons, individually and as Acting Chief Judge of the Unified Court System, various Judges of the New York City Civil Court, and various administrative officers denominated as "Judges" of the Housing Part of Civil Court, Defendants.

No. 89 Civ. 3573 (SWK).

United States District Court, S.D. New York.

Sept. 13, 1993.

Law Offices of Jay Goldberg, P.C. and Michael G. Berger, New York City by Jay Goldberg, Michael G. Berger, for plaintiffs.

Office of Court Admin., New York City by Michael Colodner, John Eiseman, for defendants Judge Jacqueline W. Silbermann, Judge Israel Rubin, Judge Albert Rosenblatt, Matthew T. Crosson, Judge Milton L. Williams, Jack Baer, Judge Sol Wachtler, and Chief Judge Richard D. Simons.

Kalman Finkel, Attorney–In–Charge, Legal Aid Soc., Civil Appeals and Law Reform Unit, New York City by Jane E. Booth, Scott A. Rosenberg, Sandra R. Farber, Jean T. Schneider, Acting Attorney–In–Charge, Legal Aid Soc., New York City by Mitchell Pratt, Amanda Moretti, Douglass J. Seidman, Attorney–In–Charge, Legal Aid Soc., New York City by Dennis Boyd, Collin D. Bull, Attorney–In–Charge, Legal Aid Soc., New York City by April Newbauer, Marshall Green, Attorney–In–Charge, Legal Aid Soc., Bronx Neighborhood Office, Bronx, NY, by Beatrice Dohrn, Helen Frieder, John T. McManus, Attorney–In–Charge, Legal Aid Soc., Rockaway Neighborhood Office, Far Rockaway, NY by Tracy Haas, David W. Weschler, Attorney–In–Charge, Legal Aid Soc., Community Law Offices, New York City by Catharine A. Grad, for proposed intervenor-defendant 588 Park Place Tenants Ass'n.

Legal Services for New York City, New York City by Andrew Scherer, David Robinson, John C. Gray, Jr., Brooklyn Legal Services, Corp. B, Brooklyn, NY by Russell Engler, Raun Rasmussen, Edward Josephson, MFY Legal Services, Inc., New York City by Steven Meyers, Susan M. Cohen, Northern Manhattan Imp. Corp., New York City by Kenneth Rosenfeld, for proposed intervenor-defendant City–Wide Task Force on Housing Court.

Finder, Novick, Kerrigan & Anderson, New York City by Andrea Novick, for pro-

posed intervenor-defendant Metropolitan Counsel on Housing.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this civil rights action, brought pursuant to 42 U.S.C. § 1983, owners of leased residential property in New York City and the Rent Stabilization Association, a landlord trade organization (collectively, the "Landlords"), allege that the Civil Court of the City of New York and its Housing Part (the "Housing Court") have deprived the Landlords of their constitutional rights. Specifically, the Landlords allege that the judges, administrators and clerical personnel of the Housing Court are biased against landlords and have implemented policies and applied the laws so as to discriminate in favor of tenants. The Landlords contend further that as a result of the Housing Court's pro-tenant bias, landlords are denied access to an unbiased tribunal before which to adjudicate owner-tenant disputes.

Presently before the Court is the motion of Metropolitan Council on Housing ("Met Council"), the City–Wide Task Force on Housing Court ("City–Wide Task Force"), and the 588 Park Place Tenants Association ("Park Place Association") (collectively, the "Proposed Intervenors" or "Tenants"), to intervene as of right, or in the alternative, by permission, pursuant to Rule 24 of the Federal Rules of Civil Procedure, as defendants in this case. The Landlords oppose the motion. For the reasons stated below, the motion is granted.

### BACKGROUND

### I. The Parties

#### A. The Defendants

The Housing Court was established in 1972 to hear "actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards, including, but not limited to, the multiple dwelling law and the housing maintenance code, building code and health code of the administrative code of the city of New York...." N.Y.Civ.Ct.Act § 110(a) (McKinney 1983). The primary purpose of the Housing Court was, and remains, to afford redress for violations of the municipal codes that govern the operation and maintenance of housing. The Housing Court is empowered to entertain petitions and issue injunctions to enforce housing maintenance standards, *id.* at § 110(a)(4), grant rent abatements for breaches of the warranty of habitability, *see* N.Y.Real Prop.Law § 235–b (McKinney 1989), and suspend rent deposit requirements when hazardous conditions exist in a building or dwelling, *see* N.Y.Real Prop.Acts.Law ("RPAPL") § 745(2)(c) (McKinney 1979).

Defendants are judges, administrators and clerical personnel of the Housing Court who are responsible for administering the court's daily operations and establishing its administrative policies. Defendants include judges who hear and determine the majority of cases that come before the Housing Court.

#### B. The Plaintiffs

Plaintiff Landlords consist of a class of individual owners and an association of owners of residential apartment buildings in the City of New York who have appeared before the Housing Court to settle disputes with tenants and are likely to do so again in the future. The Landlords claim that as a result of the alleged systematic bias of the Housing Court against owners, disputes are often settled unfairly in favor of tenants. The Landlords seek an Order directing the judges, administrators and clerical personnel of the Housing Court to implement changes in their procedures and policies so as to eradicate any pro-tenant bias.

#### C. Proposed Defendant–Intervenors

The Proposed Intervenors are tenants, and representatives of tenants, who litigate their claims in the Housing Court. Proposed intervenor Met–Council is a not-for-profit, city-wide membership organization of tenants, which assists its members, and tenants in general, by providing information concerning defending against eviction proceedings in Housing Court. *See* Declaration of Jennifer Laurie, executed on January 28, 1993, at ¶ 3.

Proposed intervenor City–Wide Task Force is a not-for-profit organization that provides information and literature to *pro se* litigants proceeding in Housing Court, in part by maintaining information tables in the housing courts in each borough. The City–Wide Task Force also acts as an advocate for *pro se* litigants by seeking improved access to the Housing Court and monitoring the court's operations. *See* Declaration of Maria Mottola, executed on January 29, 1993, at ¶ 2. Proposed intervenor Park Place Association is an unincorporated association of tenants living in Brooklyn, New York, that has been involved in an ongoing, two-year legal dispute with the landlord at 588 Park Place. Members of the Park Place Association have cases currently pending in Housing Court and are likely to bring cases there in the future. *See* Declaration of Sylvia Bishop, executed on January 29, 1993, at ¶¶ 3–4.

## II. The Lawsuit

The Landlords claim that the officials who administer the Housing Court have systematically deprived them of their due process and equal protection rights, and have also failed to enforce New York State laws which protect the rights of landlords. Specifically, the Landlords allege that Housing Court judges and administrators have, among other things: (1) publicly announced pro-tenant and anti-owner policies; (2) routinely hindered evictions by granting meritless orders to show cause and delaying the processing of warrants of eviction; (3) unfairly granted rent abatements, failed to require rent deposits and failed to award attorneys' fees to prevailing owners; and (4) permitted the proliferation and distribution of pro-tenant literature in the courthouse.

On May 22, 1989, the Landlords filed a complaint setting forth six causes of action: (1) systemic bias by the Housing Court against the Landlords in violation of the Due Process Clause of the Fourteenth Amendment (First Claim for Relief); (2) violation of the Landlords' freedom to enter into contracts by the Housing Court's refusal to enforce lease provisions requiring tenants to pay attorneys' fees (Second Claim for Relief); (3) refusal by defendants, in violation of the Free Speech and Due Process Clauses of the First and Fourteenth Amendments, to allow the Landlords to establish information tables in the Housing Court (Third Claim for Relief); (4) unequal treatment of owners and tenants in violation of the Equal Protection Clause of the Fourteenth Amendment (Fourth Claim for Relief); (5) systematic delay in the issuance of warrants against tenants in violation of RPAPL § 745 (Fifth Claim for Relief); and (6) systematic refusal by defendants to require the deposit of rent or state why the deposit is not being required in violation of RPAPL § 745 (Sixth Claim for Relief). The Landlords seek declaratory and permanent injunctive relief in the form of an order which, among other things, (1) declares the pro-tenant bias unconstitutional; (2) requires Housing Court administrators to correct that bias; and (3) appoints a special master to the Court to report on the issues involved in this lawsuit and insure compliance with any orders and judgments.

On September 12, 1991, the parties entered into a Stipulation of Settlement whereby defendants agreed to alter certain Housing Court practices. *See* Stipulation of Settlement, annexed to the Affidavit of John J. Gilbert, III, sworn to on March 17, 1993 (the "Gilbert Aff."), as Exhibit "C". At the same time, Judge Jacqueline W. Silbermann, in her capacity as Administrative Judge of the New York City Civil Court, executed a Statement of Intention which set forth initiatives that the Housing Court would take, or had taken, to modify its practices.[1] The Stipula-

---

1. The Statement of Intention sets forth, in part, that: (1) no judge shall go off the record unless both sides consent or good cause is shown; (2) at the request of either party, a court reporter will be assigned to record all proceedings; (3) if a judge orders "no further [Orders to Show Cause]," such directive will be displayed in a prominent place on any future orders to show cause; (4) the Clerk's Office will maintain a record of the status of all cases in the Housing Part, including the judge to whom each case is assigned and the date of first submission to that judge; (5) the administrators of the Housing Part will monitor the performance of court and clerical personnel to insure that cases are processed within reasonable time limits; (6) judges are required to show "good cause" where the posting of sums for rent is not directed; and (7)

tion of Settlement also provided that this Court would not dismiss this case, but would instead, place it on the suspense calendar for a period not to exceed three years. *Id.* During that time, the Landlords had the right to reinstate the action, upon thirty days notice, if the defendants failed to implement the initiatives contained in the Statement of Intention. *Id.*

By motion dated November 18, 1992, the Landlords, in response to what they believed was a failure on the part of the Housing Court to abide by the Stipulation of Settlement and Statement of Intention, requested that this action be restored to the Court's active docket and that leave be granted to file an amended complaint. Thereafter, on December 4, 1992, at a pre-motion conference, the Court orally granted plaintiffs' request to restore the case to the active docket and file an amended complaint.

On November 19, 1992, the amended complaint was filed, alleging the continued commission of the acts cited in the original complaint, as well as new and additional actions violating the Landlords' rights. Specifically, the Landlords now contend that the defendants: (1) use an inquest procedure, rather than summarily enter default judgments on sums certain, to determine rents due; (2) delay the issuance of warrants on mere technicalities; (3) sign multiple, frivolous orders to show cause; (4) demonstrate systematic anti-owner bias by, among other things, permitting anti-owner literature to be placed on tenant information tables while material placed on landlord information tables is censored; and (5) violate the letter and spirit of the Statement of Intention, entered into simultaneously with the Stipulation and Order of Settlement, as evidenced by numerous complaints lodged against various judges. *See* Amended Complaint at ¶¶ 70–73, 89, 131–34.

### III. Motion to Intervene

Presently before the Court is the Proposed Intervenors' motion, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene as of right, or in the alternative, by permission. Specifically, the Proposed Intervenors claim that the current defendants could not, and should not, be expected to represent the interest of tenants who litigate in Housing Court. Moreover, the Proposed Intervenors claim that, without their presence in the lawsuit, the Court will have an unequal picture of the operation of the Housing Court. This skewed perspective, they believe, will result in relief that severely prejudices tenants who litigate in Housing Court.

The Housing Court does not oppose Proposed Intervenors' request to intervene. The Landlords, however, oppose the Proposed Intervenors' motion to intervene, claiming that the criteria for permissive intervention and intervention as of right have not been met. The Landlords contend that intervention as of right should be denied because: (1) the motion was not filed in a timely fashion; (2) the Proposed Intervenors have not demonstrated an interest in the action and hence cannot claim that such interest will be impaired; and (3) the Proposed Intervenors are already adequately represented by defendants. Moreover, the Landlords claim that the Proposed Intervenors and defendants do not share a common question of law or fact, and thus permissive intervention should also be denied. For the reasons set forth below, the Court finds that permissive intervention is warranted.

### DISCUSSION

### I. Intervention as of Right

■ Rule 24(a)(2) of the Federal Rules of Civil Procedure states that, upon timely application, intervention is necessary when

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

owners or their representatives will be given the right to establish, maintain, operate and utilize their own information tables in the lobby of a

courthouse in which Housing Court is located. *See* Statement of Intention, annexed to the Gilbert Aff., as Exhibit "B".

Fed.R.Civ.P. 24(a)(2). Thus, to intervene as of right, the proposed intervenor must: (1) file a timely application; (2) demonstrate an interest in the action; (3) show an impairment of that interest arising from an unfavorable disposition; and (4) have an interest not otherwise adequately protected by an existing party. *See Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir.1990); *Farmland Dairies v. Commissioner of N.Y. State Dep't of Agric. and Mkts.*, 847 F.2d 1038, 1043 (2d Cir.1988); *CBS, Inc. v. Snyder*, 136 F.R.D. 364, 367 (S.D.N.Y.1991); *Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87 Civ. 0675, 1990 WL 188925, at *2 (S.D.N.Y. Nov. 20, 1990); *Krauss v. First City Fed. Sav. Bank*, No. 87 Civ. 5585, 1990 WL 124521, at *1 (S.D.N.Y. Aug. 20, 1990). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Farmland Dairies v. Commissioner of N.Y. State Dep't of Agric. and Mkts.*, 847 F.2d at 1043 (emphasis in original).

### A. Timeliness

■ In determining the timeliness of the Proposed Intervenors' application, the Court will consider, among other factors: (1) the length of time the proposed intervenor knew, or should have known, of his interests and "slept on" his rights before making the motion; (2) reasons for the intervenor's delay; (3) possible prejudice to existing parties resulting from the delay; and (4) the presence of unusual circumstances operating for or against a finding of timeliness. *Home Ins. Co. v. Liberty Mut. Ins. Co.*, 1990 WL 188925, at *2; *Krauss v. First City Fed. Sav. Bank*, 1990 WL 124521, at **1–2; *Cook v. Pan Am. World Airways, Inc.*, 636 F.Supp. 693, 695 (S.D.N.Y.1986). The most important criterion in determining timeliness is "whether the delay in moving for intervention has prejudiced any of the existing parties." *Home Ins. Co. v. Liberty Mut. Ins. Co.*, 1990 WL 188925, at *2; *United States v. International Business Machs. Corp.*, 62 F.R.D. 530, 541–42 (S.D.N.Y.1974). Absent any such prejudice, the motion for intervention will usually be deemed timely. *See Home Ins. Co. v. Liberty Mut. Ins. Co.*, 1990 WL 188925, at *2; *Cook v. Bates*, 92 F.R.D.

119, 122 (S.D.N.Y.1981); *Meyer v. MacMillan Publishing Co., Inc.*, 85 F.R.D. 149, 150 (S.D.N.Y.1980).

■ The Landlords argue that the Proposed Intervenors' motion to intervene is not timely as the motion was not brought soon after the filing of the original complaint on May 22, 1989, but rather, nearly three and a half years later, when the amended complaint was filed on November 19, 1992. Moreover, the Landlords argue that although the case has been well publicized, *see* Gilbert Aff. at ¶¶ 5, 8, at no time during the remainder of 1989, 1990, or 1991, did any of the Proposed Intervenors contact the Landlords, their counsel, or the Court with regard to the possibility of intervening, participating, or even observing any aspect of the proceedings. Gilbert Aff. at ¶ 5. Thus, the Landlords contend that the Proposed Intervenors' delay in bringing their motion to intervene warrants denial.

Despite the Landlords' arguments to the contrary, the Court finds that the Proposed Intervenors' motion is timely. As this Court has previously recognized, the date when a case comes off the suspense docket "is the operative date from which to assess the timeliness of the intervention motion." *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 35 (S.D.N.Y. 1992). Here, the Proposed Intervenors sought to intervene immediately after learning that plaintiffs intended to file an amended complaint, *see* Declaration of Scott Rosenberg, executed April 19, 1993 (the "Rosenberg Dec."), at ¶ 7, and only two weeks after the case was taken off the suspense docket. Thus, having suspended this action in the hopes that the parties would resolve their dispute, the Court will not now penalize the Proposed Intervenors for failing to move when the action was first brought. *See John v. Sotheby's, Inc.*, 141 F.R.D. at 35 n. 2.

In addition, as the Proposed Intervenors suggest, the amended complaint contains allegations of "new and additional methods to violate plaintiffs' rights" which somewhat changes the purpose of this lawsuit. *See* Affidavit of Michael G. Berger, sworn to on November 18, 1992, (the "Berger Aff.") at ¶ 4(c). First, beyond the allegations contained in the original complaint, the Land-

lords suggest additional misconduct including the use of an inquest procedure to "delay, obstruct, and subvert the administration of justice." Amended Complaint at ¶¶ 89, 131; *see also* Berger Aff. at ¶¶ 7, 40–46. Specifically, plaintiffs allege that, despite legislative directives to the contrary, defendants, rather than enter default judgments, impose an inquest procedure for defaulting tenants to determine how much rent is due. These inquest proceedings not only delay the Landlords' recovery up to sixty days, but also are conducted in a biased manner. *See* Berger Aff. at ¶¶ 43–45 (noting that Landlords, regardless of their availability, are not granted adjournments and are forced to provide certified records which are impossible to produce).

Second, plaintiffs also contend that defendants have introduced systematic delays in the issuance of warrants, which are designed to thwart their prompt processing. Amended Complaint at ¶ 132; Berger Aff. at ¶¶ 8, 47–52. In particular, the Landlords claim that their warrants are rejected at disproportionately high rates on the basis of mere technicalities, Berger Aff. at ¶ 48, and that judges refuse to execute warrants, despite the fact that the tenants themselves have stipulated to their issuance in the event of nonpayment. *Id.* at ¶ 49.

Third, the Landlords have also submitted a computer printout summary of 2,458 complaints made by city owners during the past year (after the entry of the Stipulation of Settlement), in which housing court judges allegedly refused to deposit money in court, granted meritless orders to show cause, refused to award legal fees to landlords, blocked the execution of eviction warrants, and granted adjournments over landlords' objections. *Id.* at ¶¶ 24–39. The Landlords contend that the defendants have largely ignored these complaints and have refused to investigate or modify the challenged behavior. Amended Complaint at ¶¶ 70–72; Berger Aff. at ¶¶ 36–39.

Moreover, intervention at this time will not prejudice any of the existing parties. In fact, the proposed intervention will not cause any delay or inconvenience as the Proposed Intervenors have been actively and fully participating in the current phase of discovery. *See* Rosenberg Dec. at ¶ 8 (Proposed Intervenors permitted to participate in discovery as a party); ¶ 9 (Proposed Intervenors served discovery requests, which defendants joined, on plaintiffs); ¶ 10 (Proposed Intervenors have participated fully in all court conferences). In addition, the defendants and Proposed Intervenors intend to coordinate their motion practice and defense of this litigation so as to avoid any future delay. *See* Reply Affidavit of John Eiseman, sworn to on April 19, 1993, at ¶ 5. Accordingly, in light of the fact that (1) the Proposed Intervenors sought to intervene only two weeks since the re-activation of this litigation; (2) the Landlords have raised new claims and filed an amended complaint; and (3) no party is prejudiced, the Court finds that the request to intervene is timely.

## B. Interest in the Subject Matter and Impairment of That Interest

■ In order to succeed with their motion to intervene, the Proposed Intervenors must also demonstrate that they have an interest relating to the subject matter of this action, and that the protection of that interest will, as a practical matter, be impaired by the disposition of the case in their absence. *See* Fed.R.Civ.P. 24(a)(2); *Home Ins. Co. v. Liberty Mut. Ins. Co.*, 1990 WL 188925, at *2; *Krauss v. First City Fed. Sav. Bank*, 1990 WL 124521, at *1; *British Airways Bd. v. Port Auth. of N.Y. and N.J.*, 71 F.R.D. 583, 584 (S.D.N.Y.), *aff'd*, 556 F.2d 554 (2d Cir. 1976). The Tenants' interest must be "direct, substantial, and legally protectable," and not "remote from the subject matter of the proceeding, or … contingent upon the occurrence of a sequence of events." *Washington Elec. Coop. Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d at 97; *see also Restor–A–Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir.1984). In addition, the Court must also consider "the degree to which the applicant may be 'practically harmed.'" *Home Ins. Co. v. Liberty Mut. Ins. Co.*, 1990 WL 188925, at *5.

■ The Proposed Intervenors allege that they have an interest in the subject matter of

this action as they are often directly involved with the activities of the Housing Court. Specifically, the Proposed Intervenors contend that the reforms sought by the Landlords would result in, among other things: (1) tenants being evicted without the benefit of inquests to prevent wrongful evictions; (2) clerks being barred from assisting in preparing answers and orders to show cause for the ninety percent of tenants who appear without counsel; (3) tenants obtaining fewer and smaller rent abatements for violations of the warranty of habitability by landlords; (4) courts being restricted in their discretion to grant orders to show cause to stay evictions; (5) tenants being routinely required to deposit rent into court in order to obtain necessary adjournments or even seek counsel; and (6) tenant organizations being restricted in their use of tenant information tables and distribution of literature. Moreover, the Proposed Intervenors allege that the appointment of a special master to oversee the daily operations of the Housing Court would create a climate of intimidation affecting everything from judicial appointments to decision-making in the courtroom. The Proposed Intervenors further allege that their own organizational resources would be taxed enormously if plaintiffs were to obtain relief prohibiting judges and court personnel from providing information that could be of use to *pro se* tenants. Therefore, according to the Proposed Intervenors, any change in the Housing Court's procedures in favor of the Landlords will be detrimental to the Tenants.

The Landlords contend that the interests alleged by the Proposed Intervenors are inadequate to justify intervention. According to the Landlords: (1) the relief they seek is nothing more than the evenhanded, unbiased application of the law; (2) the Proposed Intervenors' desire to see the lawsuit dismissed is not a cognizable interest; and (3) the purported interests of the Proposed Intervenors are simply not the type of direct interests required under Rule 24. Moreover, the

Landlords believe that some of the interests alleged by the Proposed Intervenors are totally speculative, such as the fear that tenant groups might have their resources taxed if judges and other Housing Court personnel are not permitted to assist tenants, or that Housing Court personnel will not fulfill their duties if Landlords prevail.

The Court finds that the Proposed Intervenors have an interest in the instant action.[2] The Proposed Intervenors and their clients, whose concerns are typically adverse to those of the Landlords, must often appear before the Housing Court. The relief requested by the Landlords would tend to weaken the Proposed Intervenors' position in Housing Court proceedings relative to landlords. Even if the Court merely compels the Housing Court to comply with its own rules and regulations, the Tenants may face increased hardship as it becomes easier for landlords to evict tenants and harder for tenants to resist such actions. Therefore, Proposed Intervenors have a significant stake in the outcome of this lawsuit.

The Court also finds that the ability of the Proposed Intervenors to protect their interests may be impaired if intervention is denied. Thus, if the Landlords prevail, some tenants would not be entitled to file orders to show cause to vacate default judgments, to modify stipulations, or to stay warrants of eviction. Procedural matters may be handled more expeditiously, thereby limiting the time available for tenants to raise rent money or retain an attorney. The Tenants may also be evicted at a faster rate. In any event, some tenants may be denied adjournments which have allegedly been liberally granted. Court personnel may also be restricted in assisting *pro se* litigants, making it more difficult for tenants, acting without representation, to proceed. Therefore, the Court recognizes that the Proposed Intervenors have a protectable interest in this action which may be impaired by the litigation's result.

---

**2.** Some of the interests asserted by the Proposed Intervenors, however, are totally speculative or too indirect to require intervention. In particular, there is no indication that the relief sought by the Landlords would result in: (1) the elimination of tenant information tables; (2) Housing Court judges being more likely to favor landlords when exercising their discretionary powers; (3) tenant intimidation resulting from the appointment of a special master; or (4) *pro se* court personnel being reassigned to process warrants.

### C. Adequate Representation

■ In order to prevail, the Proposed Intervenors must also show that their interests are not adequately protected by an existing party, in this case, the defendants. *Home Ins. Co. v. Liberty Mut. Ins. Co.*, 1990 WL 188925, at *6. Evidence of inadequate representation includes such factors as (1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence. *Id.; see also United States v. International Business Machs. Corp.*, 62 F.R.D. at 538; *British Airways Bd. v. Port Auth. of N.Y. and N.J.*, 71 F.R.D. at 585. The burden of making this showing is "minimal," however, with the weight of the responsibility for demonstrating adequate representation falling on the opposing party. *CBS, Inc. v. Snyder*, 136 F.R.D. at 368.

■ The Proposed Intervenors argue that the Housing Court will not adequately represent their interests because the Housing Court acts as a neutral party, primarily concerned with the smooth, efficient operation of the court. As such, the Housing Court is not in a position to represent tenants, nor articulate the full impact of the Landlords' proposed changes. In addition, the Proposed Intervenors claim that, although their interests overlap with the defendants in that both seek the fair and even-handed operation of the law, their interests and those of the Housing Court are also adverse. For example, Proposed Intervenors Met Council and the City–Wide Task Force has long sought reforms and improvements of the Housing Court and criticized it for its failure to correct Housing Code violations. *See, e.g., Donaldson v. State of N.Y.*, 156 A.D.2d 290, 548 N.Y.S.2d 676 (1st Dep't 1989) (state court complaint brought by City–Wide Task Force and others seeking right to counsel for low-income tenants faced with eviction), *appeal dismissed in part and denied in part*, 75 N.Y.2d 1003, 557 N.Y.S.2d 308, 556 N.E.2d 1115 (1990); *Met Council v. Crosson*, 191 A.D.2d 1052, 595 N.Y.S.2d 680 (1st Dep't 1993) (complaint by Met Council and others challenging procedures for reappointment of certain Housing Court judges).

In deciding this issue, the Court is guided by *Chicago Board of Realtors v. City of Chicago*, 673 F.Supp. 224 (N.D.Ill.1986), *aff'd*, 819 F.2d 732 (7th Cir.1987), in which landlord representatives brought suit against the city of Chicago, challenging as unconstitutional a city ordinance which regulated landlord-tenant relationships. *Id.* at 226. From the outset, three individuals and nine organizations representing tenant interests petitioned for leave to intervene as of right, claiming an interest in the enforcement of the rights and remedies provided by the ordinance for the renters of residential properties in Chicago. *Id.*

In denying the tenants' application, the Northern District of Illinois found that the city of Chicago and the tenants had the same ultimate objective—dismissal of the complaint or denial of the relief sought by landlord-plaintiffs. *Id.* at 227. The court observed that "it is a reasonable presumption that the [defendants] who were responsible for the enactment of the Ordinance have sufficient expertise in the matters addressed by their legislation to adequately protect the interests of the people for whom they pursued the enactment...." *Id.* Thus, although the tenants were later permitted to intervene permissively, pursuant to Fed. R.Civ.P. 24(b)(2), intervention as a matter of right was held to be improper.

Similarly, while it is true that the interests of the Housing Court and the Proposed Intervenors may be hostile at times, the facts of this case indicate that they are not adverse here. *See Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d at 98 ("intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action."); *Natural Resources Defense Council, Inc. v. New York State Dep't of Envtl. Conservation*, 834 F.2d 60, 61–62 (2d Cir.1987) (same); *United States v. International Business Machs. Corp.*, 62 F.R.D. at 535 (same). On the contrary, the Housing Court and the Tenants both seek dismissal of the complaint or, at a minimum, preservation of the status quo. *See Chicago Bd. of Realtors v. City of Chicago*, 673 F.Supp. at 227 (where, among other factors, defendants and intervenors had same objective—dismissal of the complaint—adequate

representation was established); *see also Cook v. Pan Am. World Airways, Inc.*, 636 F.Supp. at 697 (when the interest of the absent party is identical to that of an existing party, adequate representation will be presumed).

Moreover, the Court finds no indication that the Housing Court will not vigorously defend this case in support of its existing procedures—a position identical to the Proposed Intervenors. Indeed, counsel for the Office of Court Administration ("OCA") has defended this action for over three years, and the Proposed Intervenors have made no showing that defense counsel has handled this case poorly or that OCA has somehow "sold the tenants out" as part of their defense. On the contrary, in several instances, the Landlords and the Housing Court negotiated even greater protection for tenants. Specifically, the Housing Court and the Landlords agreed to a new rule (N.Y.Comp. Codes R. & Regs. § 220.42(i) as amended), requiring the Clerk's Office of the court, rather than the landlords, to provide tenants with postcard notification when an action against them is filed. *See* Statement of Intention, annexed to the Gilbert Aff. as Exhibit "B", at ¶ 4(a). The Statement of Intention provides further that a proper record shall be made of all Housing Court proceedings, at either party's request. *Id.* at ¶ 1. Thus, contrary to the Proposed Intervenors' claims, the Housing Court is adequately representing tenant interests. Accordingly, having found no indication that the Proposed Intervenors would add any defense to this action which will not be raised by the Housing Court, the Court finds that the Tenants are adequately represented in this action, and thus, not entitled to intervene as a matter of right.

## II. Permissive Intervention

The Proposed Intervenors also seek to intervene pursuant to Federal Rule of Civil Procedure 24(b)(2). Rule 24(b)(2) permits intervention "[u]pon timely application" when "an applicant's claim or defense and the main action have a question of law or fact in common ... [and] the intervention will [not] unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R.Civ.P. 24(b)(2); *see also Cook v. Pan Am. World Airways, Inc.*, 636 F.Supp. at 698. Permissive intervention is accorded the "broad" discretion of the court, *see SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir.1972), and is to be liberally granted. *McNeill v. New York City Hous. Auth.*, 719 F.Supp. 233, 250 (S.D.N.Y.1989). In fact, Rule 24(b)(2)'s provisions are satisfied "where a single common question of law or fact is involved, despite factual differences between the parties." *Id.*

■ The Proposed Intervenors claim permissive intervention is warranted as they have a significant interest in the outcome of the case.[3] Specifically, the Proposed Intervenors allege that they share common questions of law and fact with the Housing Court as both groups seek to address the validity of plaintiffs' constitutional claims and factual questions concerning the Housing Court's operation. The Proposed Intervenors also claim that their intervention will not unduly delay or prejudice the rights of the existing parties as they are already actively and fully participating in the discovery process.

In response, the Landlords contend that the Proposed Intervenors do not share a common question of law or fact with the defendants as the Proposed Intervenors are not responsible for the Housing Court's alleged misconduct. Although the Proposed Intervenors may share the same ultimate goals as the Housing Court, namely, maintenance of the status quo, plaintiffs contend that this interest is insufficient to warrant permissive intervention. The Landlords also maintain that the Proposed Intervenors' interests can be adequately represented through *amicus curiae* briefs.

The Court finds that permissive intervention, pursuant to Rule 24(b)(2), is warranted. The Proposed Intervenors' defense raises the same legal questions as the defense of the named defendants—all claims concern the

---

3. As the Court has already determined that Proposed Intervenors' motion was timely filed and that intervention would not delay the action or prejudice the parties, *see* Discussion IA, *supra*, those aspects of the permissive intervention standard will not be revisited.

constitutionality of the Housing Court's policies and procedures. Furthermore, the Court finds that considerations of fairness strongly weigh in favor of permissive intervention as the Tenants, in light of their knowledge and concern, will greatly contribute to the Court's understanding of this case. *See, e.g., Chicago Bd. of Realtors v. City of Chicago,* 673 F.Supp. at 228 (allowing tenants to intervene by permission in suit involving landlords and city where tenants "could address themselves with a sufficient degree of expertise in the general field of landlord-tenant relations in Chicago to be of assistance"); *see also McNeill v. New York City Hous. Auth.,* 719 F.Supp. at 250 (permissive intervention granted as to low income tenants in suit brought by other low income tenants challenging policies and procedures of city housing authority, where proposed intervenors' claims might elucidate the difficulties facing tenants as a result of Housing Authority policies). Moreover, as noted previously, *see* Discussion IA, *supra,* the Tenants' motion to intervene was timely filed and will not unduly delay the litigation as all parties, including the Proposed Intervenors, have been proceeding with discovery. Thus, exercising its discretion, the Court grants intervention.

## CONCLUSION

For the reasons stated above, the Proposed Intervenors' motion to intervene as defendants, pursuant to Federal Rule of Civil Procedure 24(b)(2), is granted. The Proposed Intervenors shall have twenty days from the date of this Order to answer the amended complaint. The parties are further directed to proceed with discovery and appear at a conference before this Court on Thursday, October 14, 1993, at 2:00 p.m.

SO ORDERED.